**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCIE RITCHEY,** | : | **Civil No. 1:25-CV-1147** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

## I. Introduction

Social Security appeals are guided by a familiar five-step analytical paradigm. Step 2 in this process entails a determination regarding whether the claimant suffers from any severe medically determinable impairments. We are mindful that in order to meet the step two severity test, an impairment need only cause a slight abnormality that has more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96–3p 85–28. Thus, the Step 2 severity inquiry has aptly been described as a "*de minimis* screening device to dispose of groundless claims." McCrea v. Comm. of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Therefore, we are cautioned that any doubt as to whether this showing has been made is to be resolved in favor of the applicant, and Step 2 denials of benefits should be

reviewed with close scrutiny. Id. Accordingly, it is axiomatic that: "[B]ecause step two is to be rarely utilized as basis for the denial of benefits, [] its invocation is certain to raise a judicial eyebrow." Id. at 361 (citing SSR 85–28, 1995 WL 56856, at *4 ("Great care should be exercised in applying the not severe impairment concept")).

This case aptly illustrates the perils of a disability analysis which begins and ends at Step 2. In applying for disability, the plaintiff, Marcie Ritchey, asserted that her migraine headaches and diabetes mellitus type 2 were disabling and the clinical record revealed she suffered from an array of impairments that affected her in various ways. In fact, in addition to her migraine headaches and diabetes, the plaintiff had undergone an aortic valve replacement due to heart failure causing fatigue, chest pain, and ongoing, uncontrollable nosebleeds or epistaxis which at one point during the relevant period required her to be hospitalized for over three weeks. Due to the plaintiff's heart conditions, her treating cardiologist concluded she would reasonably limited to sedentary work.

The ALJ's decision acknowledged that one treating source deemed these impairments to be limiting in terms of the plaintiff's long-term ability to perform work-related activity but discounted this opinion as outdated, summarily concluded at Step 2 that none of the plaintiff's impairments caused even a slight abnormality that had a more than a minimal effect on the ability to do basic work activities, and

denied her claim at Step 2 without any further analysis. Thus, the ALJ engaged in precisely the form of cursory claims analysis that is "certain to raise a judicial eyebrow." McCrea, 370 F.3d at 361.

Upon consideration, we find that the ALJ's analysis in this case erred in its Step 2 determination that none of Ritchey's impairments met this *de minimis* screening threshold designed to dispose of groundless claims. Therefore, we find that the ALJ acted prematurely in discounting this claim at Step 2 without further analysis and will remand this case for a more fulsome evaluation.

## II. Factual History and Procedural Background

On February 17, 2023, the plaintiff, Marcie Ritchey, filed an application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act. In her application, Ritchey alleged an onset of disability beginning March 1, 2019, due to migraine headaches and diabetes mellitus type 2. (Tr. 160, 163). The plaintiff was born on December 17, 1972, and was 46 years old at the time of the alleged onset of her disability making her a younger individual under the Commissioner's regulations. (Tr. 40). She later transitioned to an individual closely approaching advanced age during the pendency of her application. (Id.) The plaintiff had a significant employment history and worked as a secretary for a local government office for over twenty years. (Tr. 164).

### A. Ritchey's Symptoms and Clinical History

Although the ALJ ultimately concluded none of the plaintiff's impairments were severe, he acknowledged that she suffered from the medically determinable impairments of diabetes mellitus, type 2, migraine headaches, status post aortic valve repair, hyperlipidemia, hypertension, GERD, epistaxis, obesity, depression, and anxiety. (Tr. 16). According to the plaintiff, it was the combination of her impairments that caused her limitations. On July 15, 2023, Ritchey indicated that after multiple procedures and surgeries she has "never been able to get my pep back. I'm sick a lot." (Tr. 169). She endorsed fatigue and a need to nap for two or three hours every afternoon as well as migraines lasting for days and bad nosebleeds. (Tr. 169-70). At the hearing the plaintiff testified that her energy level is very low since her valve replacement and that she sleeps two to three hours during the day and experiences chest pain and shortness of breath with physical activity. (Tr. 33). She also testified to dizziness, numbness in her feet, and poor balance as well as back numbness and spasms. (Tr. 34). As to her migraines, she testified that she gets headaches about five times per week for anywhere from two to five hours. (Tr. 36).

The clinical record, while limited, demonstrates that the plaintiff's varied impairments cause at least some of the symptoms she describes. Indeed, Ritchey suffered from heart failure which led her to undergo a mechanical aortic valve replacement with ascending aortic aneurysm repair and atrial appendage ligation in

May 2015. (Tr. 651). While later testing showed overall acceptable function of her aortic valve prosthesis, (id.), this major surgery caused side effects which continued to affect the plaintiff into the relevant period. For example, examination reports by her primary care physician endorsed fatigue, (tr. 652, 656, 672), shortness of breath, (tr. 461), and palpitations, (tr. 461, 467). Further, she was admitted to the hospital in August 2021 after experiencing chest pressure and heaviness for two days and underwent a CT angiography of chest which showed her heart was mildly enlarged with a dilation of main pulmonary artery suggesting pulmonary hypertension (Tr. 379, 561). An echocardiogram also showed mild mitral regurgitation and impaired relaxation diastolic dysfunction. (Tr. 393-94). Records during and after the relevant period also show the plaintiff struggled with high blood pressure, (tr. 307, 382, 412, 471, 475, 585, 620, 665), and obesity, (tr. 263, 461, 473, 475), further compounding her heart-related symptoms.

Most significantly, the plaintiff experienced recurring severe epistaxis, or nose bleeds, as a side effect of the blood thinners which the record demonstrates was exceedingly difficult to control. In fact, in November 2019 the plaintiff was hospitalized for three weeks for recurring epistaxis, and her medical records endorsed a "long and difficult hospitalization," for nearly the entire month of November 2019. (Tr. 260-61). After undergoing embolization, her condition stabilized and she was able to be discharged, however as soon as February 2020 she

again reported nose bleeds at least once a week. (Tr. 475). This condition persisted even later in the relevant disability period. Throughout May and June 2023 she visited the ER, her primary care doctor, and her ENT several times for recurrent nosebleeds requiring "multiple episodes of packing and cautery." (Tr. 306, 308, 318, 333). She ultimately sought FMLA for her husband to take time off work to help her when she has nosebleeds. (Tr. 459).

In addition to complications from her heart surgery, the record also supports the plaintiff's reports of recurring migraines. In 2018 she underwent an MRI to investigate headaches, dizziness, and blurry vision and she was diagnosed with minimal nonspecific white matter disease including small vessel ischemic changes and demyelination. (Tr. 438). In January 2019 she saw a neurologist for migraines and throughout 2021, 2022, and 2023 repeatedly reported migraines and headaches to her primary care physician stating they occurred anywhere from two to five times per week. (Tr. 461, 465, 467, 469, 473, 477). Moreover, although the ALJ discounted this impairment by stating it was effectively managed with medication, in fact, no medication effectively treated her migraines. In July 2021 her primary care provider noted that she was still having daily migraines and that Topamax and Metaorpobl were "no help." (Tr. 473). In December 2021 it was noted that she had "tried and failed Topamax," and in her headache form she indicated she had also been prescribed Ubrelvy but it "doesn't work." (Tr. 187, 469).

**B. <u>Medical Opinions</u>**

Given this clinical history, Ritchey's treating cardiologist, PA-C Dustin Pine, opined in July 2024 that the plaintiff would be limited to sedentary work due to her history of heart problems including aortic valve stenosis and insufficiency as well as her valve replacement in May 2015. (Tr. 698). Several non-treating, non-examining state agency experts also considered Ritchey's impairments but concluded they were not severe and conducted no specific RFC assessment. For example, in August 2023, Dr. Glenda Ann Cardilio opined that the plaintiff's hypertension, diabetes, migraines, and depression and anxiety were medically determinable but not severe, stating, "[a]t last exam, all impairments were stable." (Tr. 42). State agency psychological consultant Dr. John David Gavazzi also concluded her mental impairments were nonsevere, concluding she had no limitations in any area of mental functioning and stating, "based on the evidence of record, the claimant's symptoms are in remission." (Tr. 43). In November 2023, on reconsideration, two other State agency experts also opined her impairments were non-severe and caused no limitations in her mental functioning. (Tr. 46-47).

It was against this backdrop that the ALJ made a Step 2 determination that Ritchey's impairments did not amount to severe conditions under the *de minimis* standards prescribed by law.

C. **The ALJ Hearing and Decision**

On August 7, 2024, the ALJ conducted a brief hearing in Ritchey's case at which the plaintiff and a vocational expert testified. (Tr. 28-38). The vocational expert (VE) testified that an individual limited to light or even sedentary exertion could perform the plaintiff's past work. (Tr. 36-37). Following the hearing, on September 17, 2024, the ALJ entered a decision denying Ritchey's application for disability benefits. (Tr. 11-25). The ALJ's analysis of this claim was somewhat cursory. Indeed, the substantive analysis began, and ended, at Step 2 of the sequential process.

The ALJ first found that Ritchey last met the insured status requirements of the Social Security Act on June 30, 2023, and had not engaged in substantial gainful activity during the period from her alleged onset date of March 1, 2019, through her date last insured. (Tr. 16). At Step 2 the ALJ concluded that Ritchey suffered from the following medically determinable impairments: diabetes mellitus, type 2, migraine headaches, status post aortic valve repair, hyperlipidemia, hypertension, GERD, epistaxis, obesity, depression, and anxiety. (Id.) However, the ALJ's analysis ended at Step 2 when the ALJ decided that Ritchey did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months; therefore, she did not have a severe impairment or combination of impairments. (Tr. 17).

In reaching this Step 2 severity determination, the ALJ acknowledged, but discounted, the body of evidence which supported a threshold, *de minimis*, assessment that these impairments were sufficiently significant that further scrutiny was justified. First, the ALJ's Step 2 analysis—which should only have determined whether this was a plainly groundless claim—indulged in a credibility evaluation of the plaintiff, finding that her description of the severity of her symptoms was unpersuasive. (Tr. 18-19). In making this credibility finding, the ALJ concluded that her intermittent epistaxis had been treated acutely but failed to acknowledge her three-week hospitalization in November 2019 for this condition. As to the plaintiff's remaining impairments of hypertension, GERD, hyperlipidemia, headaches, and diabetes mellitus, type 2, the ALJ stated in a conclusory manner that these conditions were noted as stable and effectively managed with medications and routine monitoring during the period at issue but cited only to records of her A1c. However, as mentioned above, medical records show the plaintiff's migraines were not effectively managed with medications and her blood pressure was frequently high.

The ALJ then rejected the sole treating source opinion, PA-C Dustin Pine's statement that the plaintiff was limited to sedentary work as untimely since it was issued after the date last insured. (Tr. 19). But the ALJ incorrectly stated PA Pine did not examine or evaluate the claimant during the period at issue, stating his only treatment occurred in April 2024. (Id.) In fact, treatment records show PA Pine

treated the plaintiff throughout the relevant period. (Tr. 488, 490, 654, 659). Having reached the conclusion that none of the plaintiff's medically determinable impairments were severe, the ALJ went no further. Instead, the evaluation of this claim began and ended at Step 2 with a summary rejection of this claim. (Tr. 20-21).

This appeal followed. On appeal, Ritchey contends that the ALJ's Step 2 evaluation was flawed. Recognizing that "because step two is to be rarely utilized as basis for the denial of benefits, [] its invocation is certain to raise a judicial eyebrow," McCrea., 370 F.3d at 361, we agree and will remand this case for a more fulsome evaluation of this claim.

## III. Discussion

### A. Standard of Review-The Roles of the ALJ and this Court

Resolution of any social security appeal involves consideration of the respective roles of two adjudicators—the ALJ and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To

satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment; (4) the claimant is able to do his or her past relevant work; and (5) the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i) (incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Notably, the Third Circuit Court of Appeals has recognized that the burden placed on an applicant at step two of this process is not exacting, and that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant." McCrea v.

Comm'r of Soc. Sec., 370 F.3d 357 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856, at *3).

Once the ALJ makes a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if

the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that the claimant is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 U.S. Dist. LEXIS 31292 at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put,

"this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

On this score one other rule applies. When evaluating the legal sufficiency of an ALJ decision it is axiomatic that that "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). Accordingly, we should remand for further consideration whenever the record reveals that evidence was discounted by the ALJ for the wrong reason or no reason.

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

These principles apply with particular force to an ALJ's Step 2 determinations. Step 2 of this sequential analysis is typically the first substantive benchmark an ALJ must address and is governed by familiar legal standards:

> With respect to this threshold showing of a severe impairment, the showing required by law has been aptly described in the following terms: "In order to meet the step two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96–3p, 85–28. The Third Circuit Court of Appeals has held that the step two severity inquiry is a *'de minimis* screening device to dispose of groundless claims.' McCrea v. Comm. of Soc. Sec.,370 F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec., 347 F.3d 541, 546 (3d Cir.2003). 'Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.' Id." Velazquez v. Astrue, No. 07–5343, 2008 WL 4589831, *3 (E.D.Pa., Oct.15, 2008). Thus, "[t]he claimant's burden at step two is 'not an exacting one.' McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir.2004). This step should be 'rarely utilized' to deny benefits. Id. at 361. Rather, ... [a]n individual should be denied benefits at step two only if the impairment he presents is a 'slight abnormality' that has 'no more than a minimal effect on [his] ability to work.' Id." Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 469–70 (3d Cir.2007). Accordingly, "[d]ue to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." McCrea v. Commissioner of Social Sec., 370 F.3d 357, 360 (3d Cir.2004).

Dotzel v. Astrue, No. 1:12-CV-1281, 2014 WL 1612508, at *4 (M.D. Pa. Apr. 22, 2014). Simply put, "because step two is to be rarely utilized as basis for the denial of benefits, [] its invocation is certain to raise a judicial eyebrow." McCrea, 370 F.3d

at 361.

It is against these legal guideposts that we assess Ritchey's case.

**B. This Case Will be Remanded for Further Assessment of the Evidence.**

In this case, the ALJ determined at Step 2 of the five-step sequential analysis which applies to Social Security cases that Ritchey's constellation of impairments—which her treating physician found would limit her to sedentary work—were not considered severe under the forgiving, *de minimis* standard prescribed at Step 2 of this familiar five-step paradigm.

We disagree.

In our view, more is needed here before these potentially significant impairments may be wholly discounted at Step 2. On this score, it is well-settled that this Step 2 inquiry is a *"de minims* screening device to dispose of groundless claims." McCrea, 370 F.3d at 360; Newell v. Comm. of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). Accordingly, "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant," McCrea, 370 F.3d at 360; the claimant's burden at step two is "not an exacting one," id.; and this step should be "rarely utilized" to deny benefits. Id. at 361. Further, "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." Id. at 360. As part of this "close scrutiny," it is clear that we cannot sustain a step two benefit denial decision that fails to adequately address material evidence

in the record which supports that disability claim. See Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 470 (3d Cir. 2007).

Here, there was significant, material evidence which indicated that Ritchey's combination of impairments was severe, as that term is used at Step 2 of any disability analysis, since they had more than a minimal impact on her ability to meet the demands of the workplace on a number of scores. Given the *"de minimis"* nature of the claimant's burden at Step 2, acknowledging that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant," and accepting that the claimant's burden at step two is "not an exacting one," McCrea, 370 F.3d at 360, we believe that the ALJ erred in not finding any of these conditions to be severe at Step 2.

Indeed, we find that the ALJ erred in several respects in this truncated Step 2 analysis. First, the ALJ's analysis failed to adequately address the medical records showing these impairments were, indeed, severe. In fact, although the ALJ stated the plaintiff's epistaxis was "treated acutely" and thus had no more than a minimal effect on her ability to perform work-related activity, the record actually shows that the plaintiff's ongoing nosebleeds were exceedingly difficult to control and that she underwent a "long and difficult hospitalization," for nearly the entire month of November 2019 due to this impairment. (Tr. 260-61). Further, her condition never truly seemed to stabilize during the relevant period since even throughout 2023 she

visited the ER, her primary care doctor, and her ENT several times for recurrent nosebleeds requiring "multiple episodes of packing and cautery." (Tr. 306, 308, 318, 333). The ALJ's failure to fully address the medical records showing prolonged and serious treatment for the plaintiff's epistaxis was error since this clearly meets the *de minimis* threshold required at Step 2.

Similarly, the ALJ's conclusion that the plaintiff's migraines, which she reported occurring up to five times per week, were stable with medication is simply not reflected in the record.[1] In fact, the record shows that no medication effectively treated her migraines. In July 2021 her primary care provider noted that she was still having daily migraines and that Topamax and Metaorpobl were "no help." (Tr. 473). In December 2021 it was noted that she had "tried and failed Topamax," and in her headache form she indicated she had also been prescribed Ubrelvy but it "doesn't work." (Tr. 187, 469). Moreover, throughout 2021, 2022, and 2023 she repeatedly reported migraines and headaches to her primary care physician stating they occurred anywhere from two to five times per week. (Tr. 461, 465, 467, 469, 473,

---

[1] Moreover, as the plaintiff points out, this line of reasoning has been rejected by the Third Circuit which has held, "observations that [the claimant] is stable and well controlled with medication during treatment does not support the medical conclusion that [the claimant] can return to work . . . [and] does not satisfy the substantial evidence standard." Nazario v. Comm'r Soc. Sec., 794 F. App'x 204, 211 (3d Cir. 2019).

477). The ALJ's failure to more fully address the records of the plaintiff's migraines prejudiced the Step 2 severity assessment, particularly where the ALJ was obliged to resolve all doubts in favor of the plaintiff.

These errors in assessing the treatment records were then compounded by the ALJ's rejection of more evidence weighing in favor of meeting the *de minimis* Step 2 standard: the plaintiff's treating cardiologist's opinion that she was limited to sedentary work. While this relatively limited medical opinion might not ultimately carry the day in a full five step evaluation of Ritchey's claim, it was error to summarily discount that opinion as legally insufficient at Step 2. Indeed, the ALJ's rejection of this opinion was based upon a misstatement of fact that the plaintiff's treating cardiologist did not treat her during the relevant disability period when treatment records clearly show he did.

Nor can we treat this error as harmless in the facts of this case. In this regard "we apply harmless error analysis cautiously in the administrative review setting." Fischer–Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). Thus:

> In Social Security appeals courts may apply harmless error analysis when assessing the sufficiency of an ALJ's decision. Seaman v. Soc. Sec. Admin., 321 Fed.Appx. 134, 135 (3d Cir. 2009). "Under the harmless error rule, an error warrants remand if it prejudices a party's 'substantial rights.' An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the 'perceived fairness, integrity, or public reputation of judicial proceedings.'" Hyer v. Colvin, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

Harrison v. Berryhill, No. 3:17-CV-618, 2018 WL 2051691, at *5 (M.D. Pa. Apr. 17, 2018), report and recommendation adopted, No. 3:17-CV-0618, 2018 WL 2049924 (M.D. Pa. May 2, 2018). While Step 2 errors can in some instances be deemed harmless, the key to a harmless error evaluation of a Step 2 error turns on whether the plaintiff's conditions received any further substantive consideration at subsequent stages of analysis. As we have observed on this score:

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. See Nosse v. Astrue, No. 08–[CV–1173, 2009 WL 2986612, *10] (W.D.Pa. Sept.17, 2009).

Stouchko v. Comm'r of Soc. Sec., No. 1:12-CV-1318, 2014 WL 888513, at *10 (M.D. Pa. Mar. 6, 2014) (quoting McClease v. Comm. of Soc. Sec., No. 8–CV–1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009)). See also Salles v. Comm. of Soc. Sec., 229 Fed. App'x 140, 145, n. 2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

However, in this case, the ALJ's decision both began and ended at Step 2 with a finding that impairments, which were described by Ritchey and confirmed by her

treating source as severe, did not meet minimal threshold prescribed by law. In the absence of any further evaluation of Ritchey's case by the ALJ, we are left at sea and may not give the Commissioner the benefit of the safe harbor afforded by the harmless error doctrine.[2] Simply put, more is needed here. Since the ALJ's burden of articulation is not met in the instant case, this matter will be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV. Conclusion

Accordingly, for the foregoing reasons, this case will be REMANDED for further consideration.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: November 4, 2026

[2] This failure of the ALJ to continue the RFC analysis in this case is puzzling since the vocational expert who testified at the hearing provided the ALJ with an escape hatch in that he testified the plaintiff could perform her past work even if limited to sedentary work, a level of work that her treating provider opined she could perform. (Tr. 36-37).